STATE OF IOWA, Appellant, v. G. H. HAUG.

**Fishing:** "WATERS OF THE STATE" DEFINED. A lake lying more than a quarter of a mile away from the river and wholly in Iowa is, though connected with it, not a part of the Mississippi within the meaning of Acts Twenty-third General Assembly, chaper 34, which exempts "fishing in the Mississippi" from the statute penalty. *Dunleith v. County*, 55 Iowa, 558, *distinguished*.

*Appeal from Allamakee District Court.*—HON. W. A. HOYT, Judge.

THURSDAY, OCTOBER 3, 1895.

The defendant was charged with unlawfully seining fish. He was tried before the mayor of the city of Lansing, Iowa, and convicted. He appealed to the district court of Allamakee county. In said court he was found not guilty. The state appeals.—*Reversed*.

*Milton Remley,* attorney general, *E. M. Woodward,* county attorney, *J. H. Trewin,* and *J. P. Conway* for the state.

*Park & Odell* for appellee.

Kinne, J.—I. It is not disputed that the defendant in December, 1893, caught several thousand pounds of fish—sunfish, pike, bass, and pickerel—with a seine about four hundred feet long, which was drawn under the ice, in Big Lake, in Allamakee county, Iowa. For this act he was arrested, and brought before the mayor of the city of Lansing, on information filed by the fish commissioner of the state, charging the defendant with illegally seining fish, contrary to the laws of this state. He was convicted, and appealed to the district court. There was a jury trial, and at the close of the evidence the court directed a verdict for the defendant, from which this appeal is prosecuted.

II.   There are a number of assignments of error in this case growing out of the rulings of the court upon the introduction of testimony, the refusal to give instructions asked by the state, the action of the court in directing a verdict for the defendant, and in other respects. Nearly all of these, however, in one way or another, relate to, and all are dependent on, the solution of the real question in controversy, viz. whether or not Big Lake is a part of the Mississippi river, within the meaning of the statute which exempts the waters of said river from the operation of the laws of this state prohibiting the seining of fish. To this question only shall we direct our attention.

The statute upon which the information against the defendant is based is found in the Acts of the Twenty-third General Assembly (chapter 34), and is entitled "An act for the protection and preservation of fish," etc. It is provided by section 2 of the chapter

that: "It shall be unlawful for any person to take from any of the waters of the state any fish in any manner except by hook and line; except that it shall be lawful for any person to take minnows for bait with a seine that does not exceed five yards in length. Also that it shall be lawful to take buffalo and suckers by spearing between the first day of November and the first day of March following. * * *" Section 6, under which the information was drawn, reads: "No person shall place, erect or cause to be placed or erected, in or across any of the rivers, creeks, lakes, or ponds or any outlets or inlets thereto any trot line, seine, net, weir, trap, dam or other obstruction in such manner as to hinder or obstruct the free passage of fish up, down, or through such water course for the purpose of taking or catching fish unless the same be done under the supervision of the fish commissioner, except minnows as provided in section 2 of this act." Section 7 of the act prohibits the placing of drugs, dynamite, powder, etc., "in any of the waters of the state," for the purpose of destroying or catching fish. In section 8 it is provided that any person found guilty of violating sections 6 or 7 of the act shall, upon conviction, be fined not less than twenty-five dollars, nor more than one hundred dollars, and stand committed until such fine is paid. Section 11 of the act provides that "nothing herein contained shall be held to apply to fishing in the Mississippi, the Missouri, or the Big Sioux rivers, nor so much of the Des Moines river as forms the boundary between the states of Missouri and Iowa." Defendant relies upon the provision of the section last quoted, and claims that Big Lake constitutes a part of the Mississippi river, which is exempted from the operation of the act. It is not questioned that, if Big Lake is not a part of the Mississippi river, within the meaning of the act, then defendant is guilty of having violated the law.

The plat above will aid in understanding the situation of Big Lake, and its connection with the main channel of the Mississippi river.   Big Lake is about a mile and a half long, and three-quarters of a mile wide.

It rests in a shallow basin or depression, and has sloping banks. While there is a conflict in the testimony as to whether or not there is a current in this lake, we think the weight of the evidence is to the effect that at an ordinary stage of water there is no current. It appears that the water is clearer than that in the Mississippi river. The lake is from four to six feet deep. At an ordinary stage of water in the lake, the water in the outlet is about two feet deep, and from ten to twenty feet wide. The testimony tends to show that for two years prior to the trial of this case in the court below, viz. in 1892 and 1893, there had been no water running into this lake, though when the water is high there is a water connection at the north end of the lake. There are several sloughs between the lake and the main shore on the Iowa side, west of the lake. From the hills on the Iowa side of the river to the lake, it is a mile and a half. The land lying east of Big Lake, and between it and the main channel of the river, is used for grazing and hay land, and on it are trees ranging in size from an inch or two in diameter up to three or four feet. It is admitted that Big Lake and the slough lying west of it have not been used for purposes of navigation. Big Lake, then, is a body of water having well-defined shores, and no current. It is from a quarter to a half a mile west of the main channel of the Mississippi river at the nearest point. It appears that there are times when the high water overflows all, or nearly all, of the land between the mainland on each side of the river. From the evidence it is clear that Big Lake is not a part of the Mississippi river, so far as navigation is concerned. It is not disputed that it lies wholly within the state of Iowa. It follows, then, that Big Lake, lying as it does wholly within the state of Iowa, does not constitute a part of the Mississippi river, for boundary purposes. *Dunleith & D. Bridge Co. v. County of Dubuque,* 55 Iowa, 558 [8 N. W. Rep. 443];

*Buttenuth v. Bridge Co.,* 123 Ill. 535, 17 N. E. Rep. 439; *State of Iowa v. State of Illinois,* 147 U. S. 1, 13 Sup. Ct. Rep. 239. We think it is quite clear that the intention of the law was to prohibit seining within water wholly within this state. Section 2 of the act heretofore referred to uses the words,"from any of the waters of the state." In section 3 the words used are,"from any of the waters of the state." In section 7 the same words are used. These words very definitely cover all waters lying wholly within this state, and there can be no doubt they include Big Lake, unless it is exempted from their operation by virtue of the provision of section 11 of the act. Now, it is apparent that section 11 excepts from the operation of the act only the boundary waters of the state, over which the state has not exclusive jurisdiction. There is nothing in the section which suggests that it was the intent of the legislature to exempt from the operation of the act waters which lie entirely in our own state. Big Lake being wholly within the state, we can discover no reason for saying that it was not the intention of the legislature that the provision of the act prohibiting seining in "any of the waters of the state" should not apply to it, the same as to any other body of water entirely within the state. We think that the "Mississippi" river which is excluded from the provision of the act, includes only that body or stream of water, which is popularly known as such river; that the wording of section 11 of the act indicates that it was the "Mississippi" river which constitutes the boundary line of the state which the legislature had in mind. Again, we may look to the evil sought to be remedied by this legislation. The purpose was to prevent the wanton and unnecessary destruction of fish in the waters over which the state has exclusive jurisdiction; to preserve the fish in said waters for the use of the people of the state. If it be true that these lakes and streams, which, though connected with the main

body of water known as the "Mississippi River," yet
form no part of the river proper, are not waters in
which seining is prohibited, then the legislation falls
far short of remedying the evil which existed, and these
waters of the state, which, we are justified from the evi-
dence in this case in saying, constitute the most valu-
able fishing grounds in the state, may be despoiled in
this wholesale way of their wealth of fish without let or
hindrance. To be justified in reaching such a conclu-
sion, it should appear clearly that such waters were
intended to be exempted from the operation of the law.
We find nothing in the law to warrant defendant's con-
tention. We do not deem it necessary to discuss what
constitutes the middle of the main channel of the river.
The "Mississippi River" spoken of in the statute is the
river as usually referred to. It means that body of water
which forms the eastern boundary of the state, and, from
the wording of certain sections of the act, it is manifest
that it was not intended to embrace within the words
"Mississippi River" waters entirely within the state,
though having connection with said boundary stream.
Appellee relies upon the case of *Dunleith & D. Bridge
Co. v. County of Dubuque, supra.* It is claimed that
that case is decisive of this controversy. We do not
think so. The question in that case was as to what
part of plaintiff's bridge was properly assessable in
Iowa. It was held that the word "channel," as used in
the act of congress admitting Iowa into the Union, and
in our state constitution in defining our eastern bound-
ary as the middle of the main channel of the river,
referred to the bed in which the main stream of the
river flowed, and not to the deep water of the stream,
as followed in navigation. Big Lake is in no sense a
channel of the Mississippi river, and no question is made
that it is wholly within the state of Iowa. It is a part
of the river in the sense only that it is connected with
it, and in every other respect it is as distinct a body of

water as any which may be found in the interior of the state. On the one hand, the legislature prohibits seining in any of the waters of the state. On the other hand, it says, in effect, that this prohibition shall not extend to boundary waters over which the state has not exclusive jurisdiction. Such, we think, is the fair and proper construction of the law. The court below therefore erred in holding that Big Lake was a part of the Mississippi river, and exempted from the operation of the law. The defendant having been acquitted, the only effect of this opinion will be to settle the law of the case.— *Reversed.*