**STATE of Maine**

v.

**George D. RICHARDSON, Jr.**

Supreme Judicial Court of Maine.

Jan. 3, 1972.

Alan C. Pease, County Atty., Wiscasset, for plaintiff.

Richardson, Hildreth, Tyler & Troubh, by Edward T. Richardson, Jr., Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

This case is before us on report upon an agreed statement of facts from the Superior Court, County of Lincoln. We are to decide the rights of the parties as the law requires.

The case came to the Superior Court on an appeal, entered March 25, 1970, from a conviction of the defendant in the Sixth District Court held at Wiscasset, County of Lincoln.

The complaint against the defendant charged a violation of 12 M.R.S.A. § 4466 [1] in that

"on or about the tenth day of February 1970, in the Town of Southport, County of Lincoln and State of Maine, * * * George D. Richardson, Jr., did then and there possess certain lobsters on board a boat rigged for otter or beam trawling, to wit; Marsha Ann, it being unlawful to possess lobsters on any such boat regardless of their source."

Defendant pleaded not guilty to the charge and after a trial in the District Court was there found guilty and adjudicated convicted of the offense charged against him.

The particular circumstances of defendant's possession of the lobsters were the following:

"1. The F/V Marsha Ann, George Richardson, Captain, with one crewman

---

[1]. 12 M.R.S.A. § 4466, enacted in 1969, P.L.1969, Chap. 221, reads:

"It is unlawful for any person to fish for, catch or take any lobsters by use of an otter or beam trawl, or to have in possession any lobsters on board of any boat rigged for otter or beam trawling regardless of their source.

"1. Exception. This section shall not apply to any person who catches or takes lobsters by use of an otter or beam trawl provided said lobsters are liberated alive when caught. This section shall not apply to any person who uses an otter or beam trawl and who desires to fish for lobsters or crabs by pots or traps providing all nets are removed from the boat before fishing for lobsters."

on board on February 10, 1970 was fishing for shrimp in the Sheepscot River, approximately 15 minutes outside of Boothbay Harbor, and along with the shrimp drew in a number of lobsters.

"2. The Marsha Ann was rigged for otter trawling.

"3. The vessel came into the Robinson wharf in Boothbay Harbor and tied up there.

"4. While the vessel was returning to port several lobsters were culled out of the net and placed into a container on the deck, the defendant intending to retain them for food. They were on the deck in said container after the vessel had been tied up at the wharf.

"5. When Coastal Wardens Leo Simmons and James Brown approached the vessel as it lay at the wharf they observed the defendant with the said lobsters in his possession on the deck of the vessel."

Defendant's claim of error in his conviction by the District Court is based upon a challenge to the constitutionality of the statute under the Maine Constitution and the due process and equal protection of the laws Clauses of the Fourteenth Amendment to the Constitution of the United States. Our analysis will concentrate upon the Fourteenth Amendment issues since we conceive the limitations upon the powers of the State to act in the matters now before us established by the Maine Constitu-

tion to be no more stringent than the restrictions federally imposed.

■ Regardless of doubts which might exist that the State of Maine in its sovereign capacity "owns", as property in trust for all of the people of the State, lobsters found in the coastal waters of Maine within the three mile maritime belt, see: State v. Alley, Me., 274 A.2d 718 (1971) [2]; Russo v. Reed (D.C.Me.) 93 F.Supp. 554 (1950); Toomer v. Witsell, 334 U.S. 385, 399–402, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948); Takahashi v. Fish and Game Commission, et al, 334 U.S. 410, 420, 421, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948)—the State of Maine has constitutionally valid police power, in the absence, as here, of conflicting federal regulation, to conserve the lobster fishery existing within its coastal waters.[3] Manchester v. Massachusetts, 139 U.S. 240, 265, 11 S.Ct. 559, 35 L.Ed. 159 (1891); Bayside Fish Flour Co. v. Gentry, et al, 297 U.S. 422, 426, 56 S.Ct. 513, 80 L.Ed. 772 (1936); Skiriotes v. Florida, 313 U.S. 69, 75, 61 S.Ct. 924, 85 L.Ed. 1193 (1941); Toomer v. Witsell, supra; Felton v. Hodges, 374 F.2d 337 (5 CCA, 1967); Commonwealth v. Trott, 331 Mass. 491, 120 N.E.2d 289 (1954).

The purpose which the "possession" prohibition of the statute at issue may be regarded as manifestly designed to achieve,— conservation of the lobster fishery within Maine's coastal waters—is, therefore, a constitutionally valid statutory objective.

Defendant, however, claims *facial* infirmity in the "possession" prohibitions of

2. State v. Alley, supra, distinguishes "shellfish in the tidal flats . . . which may be treated as having a relatively fixed location" and seems to allow the "trust-property" principle to be applicable in that situation.

3. "Coastal waters" in the present context are defined by Maine statute to include: " . . . the marine limits of the jurisdiction of the State." 12 M.R.S.A. § 3401, subd. 4. In State v. Ruvido, 137 Me. 102, 15 A.2d 293 (1940) this Court said, quoting Commonwealth v. Manchester, 152 Mass. 230, 240, 25 N.E. 113, 116 (1890): "We regard it as established

that, as between nations, the minimum limit of the territorial jurisdiction of a nation over tide waters is a marine league [3 miles] from its coast, . . ., and that included in this territorial jurisdiction is the right of control over fisheries, whether the fish be migratory, free-swimming fish, or free-moving fish like lobsters, or fish attached to or imbedded in the soil." (137 Me. p. 107, 15 A.2d p. 296)

By this principle the Court decided that the territorial waters over which Maine has jurisdiction and sovereignty embraces a three mile maritime belt from the coast.

the statute on the ground that the absolute prohibition against any persons having "in possession any lobsters on board of any boat rigged for otter or beam trawling regardless of their source" (the statute excepting only a momentary possession incident to the liberation alive of lobsters which are caught or taken by use of an otter or beam trawl) is "so excessive as to go beyond any reasonable relationship to the presumed need of the Statute . . . . "

As illustrative of such excess, defendant hypothesizes the possession of lobsters by men living on the trawler while she is in port who have gone down the street to purchase them and have brought them back on board the trawler to eat. Contending that the particular application of the statute to illegalize possession of the lobsters in such a context of circumstances would be unduly oppressive and patently arbitrary in relation to the objective of lobster conservation, defendant argues that the "possession" prohibition of the statute should, therefore, be adjudicated by this Court to be unconstitutional in all its applications, i. e., that the statute is *facially* unconstitutional in its provisions regarding the possession of lobsters.

■ The possession of lobsters on a boat rigged for otter or beam trawling may rationally be regarded by the Legislature, in terms of the feasibility and effectiveness of enforcement techniques—(enforcement being a subject-matter which can involve multitudes of local circumstances concerning which the Legislature can be better informed than a Court)—, to be closely related to the constitutionally permissible objective of conserving the lobster fishery in Maine's coastal waters. Hence, a constitutional attack, launched facially against the "possession" prohibitions of the statute at issue, and predicated upon due process and equal protection considerations, must fail when, as is true of the present statute, the core of the statute has reasonable application to a substantial expanse of situations clearly lying within the scope of the evils which the State in the exercise of its police power may constitutionally seek to prevent. Regardless, therefore, of conceivable instances of over-inclusiveness, or excessiveness, at the fringes of the "possession" concept in relation to enforcement, *facial* constitutional attack must fail, United States v. Raines, et al, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960),[4] since the "possession" prohibition of the statute on the whole, and in spite of the imposition of hardship in particular cases, reasonably promotes the State's lobster conservation interests by operating

"as a shield against the covert depletion of the local supply, and thus tends to effectuate the policy of the law by rendering evasion of it less easy."

Bayside Fish Flour Co. v. Gentry, et al, 297 U.S. 422, 426, 56 S.Ct. 513, 515, 80 L. Ed. 772 (1936). See also: Miller v. McLaughlin, 281 U.S. 261, 50 S.Ct. 296, 74 L.Ed. 840 (1930); Johnson, et al v. Gentry, et al, 220 Cal. 231, 30 P.2d 400 (1934); and Commonwealth v. Trott, supra.

The same principle governs in relation to the "regardless of source" provisions

---

4. In the present case defendant has omitted to raise a claim that the statute by its literal language purports to make illegal a "possession" of lobsters which occurs as conduct outside the coastal waters of the State of Maine. Even were it the intention of the Legislature to have the statute thus applicable, in light of decisions such as Skiriotes v. Florida, supra, and Felton v. Hodges, supra,—recognizing the constitutionality of a State's reach, in the absence of conflicting federal regulation, to regulate conduct by one of its own citizens occurring on waters outside the three mile maritime belt and which is rationally related to the conservation of fisheries existing within the State's coastal waters and over which, therefore, the State may constitutionally exercise appropriate police power, a *facial* attack on the present statute on this basis must likewise fail. To raise the issue the statute must be attacked in terms of constitutionality as applied in an actual situation in which the possession is shown to have existed *only* outside the waters over which Maine has jurisdiction.

specifically as to lobsters which might have been taken in waters beyond the three mile maritime belt but which, as in the case at bar, are possessed within the territorial jurisdiction of Maine. The prohibition of such possession bears a rational relationship, enforcement-wise, to the proper maintenance of the lobster fishery in Maine's coastal waters. Skiriotes v. Florida, supra, Felton v. Hodges, supra, Bayside Fish Flour Co. v. Gentry, supra.

■ The "possession" features of the statute at issue thus withstand facial constitutional attack. One who seeks to assert a particular conglomerate of circumstances in which the operation of the statute might be unconstitutional must prove such facts in an actual case to test the constitutionailty of the statute, as applied, rather than to seek to invalidate it on its face by hypothesizing marginal situations in which the statute might be conceived to operate with unduly oppressive or unjustifiably arbitrary impact indicative of unconstitutionality. United States v. Raines, supra.

■ In addition to his facial attack defendant has asserted the unconstitutionality, as applied, of the "possession" prohibitions of the statute in question in relation to special ciricumstances here shown. Defendant adverts to the stipulated facts that the vessel which was rigged for otter trawling had been tied up at the Robinson Wharf in Boothbay Harbor and that the several lobsters in defendant's possession aboard the vessel had been "culled out of the net and placed into a container on the deck, the defendant intending to retain them for food." Defendant asserts that upon these facts the "possession" prohibition of 12 M.R.S.A. § 4466 is unconstitutional as applied since it outlaws the "custom" followed by fishermen "from time immemorial", as a "by-product" of their occupation, that they retain a portion of their catch for their own sustenance. Defendant argues that the elimination of the "custom" in regard to lobsters incidently taken while trawling for other fish is unduly oppressive and palpably arbitrary because an exception to preserve the "custom" would not jeopardize the success of the State's lobster conservation objectives.

Within the statement of defendant's argument lies its refutation insofar as the argument seeks to accomplish judicial invalidation, on constitutional grounds, of the application of the statute in the case at bar.

The conduct of the defendant by which he acquired possession of the lobsters which he retained—sweeping them in as an incident of trawling for other fish and failing to liberate them alive—is squarely within the hard core of conduct which it is the primary legitimate concern of the statute to prohibit, thereby effectively to achieve the State's lobster conservation purposes. As to such conduct, then, it was surely within the legislative province to assess whether to allow an exception to honor the "ancient custom" of fishermen who, while at sea, retain a few fish from their catch for their own use. Specifically, it was for legislative evaluation whether the creation of such an exception would debilitate the vitality of the State's lobster fishery conservation program by excessive weakening of the enforcement muscle— an atrophy which could result from either (1) the likelihood that fishermen could, or would, concoct tall tales magnifying their gustatory and other generalized situational needs for lobsters as sustenance, or (2) the necessity, in fairness, to allow additional exceptions, once the exception suggested by the defendant in the present case might be recognized, predicated upon a variety of localized factors and considerations (and upon which the Legislature is more expert to make a judgment than this Court).

In its wisdom the Legislature concluded that an exception should be denied and that the "custom" of fishermen must yield to the general welfare as reflected in the State's concern to protect and maintain the supply of lobsters in Maine's coastal waters. We cannot say that this judgment by the Legislature was irrational. Any hardship to fishermen—(if it be hard-

ship, at all, that fishermen might be required to forego, as food, lobsters which have been taken by them as an incident of trawling for other fish and from which other fish, instead of from the lobsters, they might keep a few for food)—is, when measured against the State's legitimate lobster conservation interests, neither an undue oppression of fishermen nor an arbitrary deprivation of benefits which fishermen, as a class, might otherwise be entitled to enjoy.

Defendant's asserted defense of the unconstitutionality of the statute on its face or as applied, in terms of a denial of due process or equal protection of the laws, is without merit.

The entry is:

Case remanded to the Superior Court for further proceedings not inconsistent with this opinion.